EXHIBIT A

McCUSKER, ANSELMI, ROSEN & CARVELLI, P.C.
210 Park Avenue, Suite 301
Florham Park, New Jersey 07932
(973) 635-6300
Attorneys for Plaintiff Shyam Bhaskar

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION: MERCER COUNTY
DOCKET NUMBER:

SHYAM BHASKAR,

Plaintiff,

v.

ATLAS SYSTEMS INC. AND VENUGOPALA
CHALAMALA

Defendants.

Civil Action

**VERIFIED COMPLAINT**

**PLAINTIFF SHYAM BHASKAR,** by way of Verified Complaint against defendants ATLAS SYSTEMS INC. and VENUGOPALA CHALAMALA (collectively, the "Defendants"), states as follows:

### PARTIES

1.     Plaintiff Shyam Bhaskar ("Bhaskar") is an individual residing at Apartment # 402, 4th Block, Jains Prakriti, K R Road, Banashankari II Stage, Bangalore, INDIA 560 070. Bhaskar served as the Chief Operating Officer as well as a shareholder of all Atlas entities since he became an officer and shareholder on or about June 1, 2006 until his constructive discharge in June 2009. Bhaskar, who has a PhD in Engineering as

well as two masters degrees in Business and Manufacturing Systems from the University of Wisconsin, prior to joining Atlas held a senior role with international corporations such as Dell Inc. and i2 Technologies. He is well-recognized and respected in his industry and won various awards including the office of the Chair award from Michael Dell, CEO of Dell Inc.

2.      Defendant Atlas Systems, Inc. ("Atlas" or the "Company") is a New Jersey corporation with a principal place of business at 5 Independence Way, Suite 200, Princeton, New Jersey 08540. Before incorporating in New Jersey on or about January 14, 2007, Atlas Systems, upon information and belief, operated as a Texas Corporation named Atlas Productions with offices at 275 Madison Avenue, New York, New York. An Indian company, Atlas Systems Private Limited, operates with registered offices in Chennai, India with Venugopala Chalamala as the majority shareholder and has served as an offshore delivery center for Atlas Productions and/or Atlas Systems Inc. since its incorporation in 2003.

3.      Atlas has, at all relevant times, been in the business of providing information technology services for corporations. Atlas's business has been growing steadily since the inception of its operations, largely because of the accounts secured by Bhaskar's hard work and contacts. Its gross revenues are, upon information and belief, approximately $15 million and as of May of this year, Atlas had approximately 250 employees.

4.      Defendant VENUGOPALA CHALAMALA ("Chalamala") is an individual residing on Major Lane, Plainsboro, New Jersey. At all relevant times, Chalamala has served as the CEO and thirty-five percent (35%) shareholder of Atlas. Despite clear

representations by Chalamala to Bhaskar and third parties, including a third-party lender, that he owned 35% of Atlas Systems Inc. and Bhaskar owned 25%, New Jersey Department of the Treasury records show Chalamala is the president and sole shareholder of Atlas.

5.   There are three other individuals who are shareholders of the Atlas entities: Brandon Ellis ("Ellis") is an individual believed to reside in New Jersey or New York.  At all relevant times, Ellis has served as president and apparent shareholder of Atlas.  Ellis has served as a full-time employee of Atlas, directing certain operations, since the inception of its operations and has essentially been Chalamala's lieutenant. Chalamala represented to a third party lender that Ellis owned 20% of Atlas Systems Inc., and together they have controlled a majority of shares.

6.   Two other individuals are, based upon Chalamala's email to the same third-party lender, minority shareholders of Atlas Systems Inc., each with a 9% interest: Kulbushan Sharma ("Sharma") and Manoj Kumar Mulasi ("Mulasi") of Chennai, India. Neither is named as a defendant in this action.

7.   All of these shareholders are employees of all Atlas entities, although they may be paid through different entities. Employment was inextricably intertwined in the shareholder arrangement as in many closely held corporations.

## BACKGROUND ALLEGATIONS

8.   This action is brought on behalf of Bhaskar for a declaratory judgment that Bhaskar is the equitable owner of 25% of Atlas, as well as injunctive relief against and damages from Defendants, for a declaration of minority shareholder oppression pursuant to N.J.S.A. 14A:12-7 (including a forced purchase of Bhaskar's shares), fraud, breach of

contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, conversion, quantum meruit, unjust enrichment and for an immediate accounting, access to books and records of the company, expedited discovery, and an order requiring the Company maintain the status quo.

9.      As set forth below, the individual defendants, particularly Chalamala, have engaged in numerous acts intended to oppress Bhaskar's rights as a COO and shareholder and while at the same time enriching themselves at Bhaskar's and Atlas' expense. It was Bhaskar's expertise and relationships which have provided the company with more than 65% of its client base, and where the clients were not informed that Bhaskar was constructively discharged from his role as COO. Only this court's immediate intervention, through ordering an accounting, access to books and records, expedited discovery and maintaining of the status quo, can provide Bhaskar an opportunity to determine the corporation's worth before its assets are diminished or dissipated because of the oppression of the individual defendants.

A.      **Background: The Hiring of Bhaskar by Atlas Systems**

10.      Upon information and belief Atlas was formed in May 2003 by defendants Chalamala, who had earlier been employed by Changepond Technologies, and Ellis, who was with J.D. Power and Associates, as an offshore development partner for the automotive industry. The company later branched out to provide IT services and other support for other industries.

11.      "Atlas Systems" is a euphemism for three entities controlled by Chalamala which are essential one entity: Atlas Productions, which initially hired Bhaskar in 2006; the Indian corporation, Atlas Systems Private Limited, which was formed in 2003; and

Atlas Systems, Inc., a New Jersey Corporation formed in 2007. Bhaskar was promised at several points, verbally and in emails, that ownership across each entity would be identical.

12.    In or about early 2006, Bhaskar, a former classmate and friend of Chalamala, was recruited from a senior position with Dell Inc. based in India, to join Chalamala as his partner in running and growing Atlas Systems. Chalamala originally promised that he would partner with Bhaskar and provide him significant responsibility equivalent to that of a "two in a box." To lure him into joining Atlas as a partner, Chalamala provided the valuation figures of the company at about 1.5 times revenue.

13.    On April 7, 2006, Chalamala sent Bhaskar a formal letter offering employment with Atlas Systems in which he stated: As Chief Operating Officer of Atlas, "you will be the head of operations and will be responsible overall delivery of the organization and you will be reporting to the CEO" offering a $100,000 annual salary, plus a "variable component" of $25,000 annually and 10% equity in the company. "Based on your FY 2006 performance review we will revise the equity component to 15%," Chalamala wrote.

14.    The stationary on the letter sent by Chalamala referred to offices in New York City at 275 Madison Avenue, 6th Floor, and in Chennai, India. The letter assigned Bhaskar to work in the Chennai office, but provided him notice that his "services may be transferred or assigned to any branch or working location of the company."

15.    Attached to the letter is a Mutual Non-Disclosure and Non-Compete Agreement, (the "Agreement") which provided a Chennai address for the company, which was not referred to as Atlas Systems Private Limited, which was in existence at the

5

time, but "Atlas Systems." The Agreement oddly referred to Bhaskar as a "subcontractor," and stated that the Agreement was governed by the laws of the State of Texas. Bhaskar is unaware that he signed this agreement, which was submitted to him and signed by Chalamala to facilitate the exchange of confidential client information for the period preceding Bhaskar actually commencing employment on June 1 2006.

**B.    Disputes between Bhaskar and other Shareholders**

16.    During all of his discussions with Chalamala, Bhaskar was promised that although he ultimately reported to Chalamala, he would have independent areas of supervision and would be fully enabled to act entrepreneurially, essentially jointly running Atlas Systems with Chalamala. However, from the first announcement of Bhaskar's arrival to employees drafted by Bhaskar, Chalamala refused to share or cede any operational control and continued to micromanage Bhaskar.

17.    During subsequent weeks and months, the conflict in the leadership styles and vision between Chalamala and Bhaskar became starkly apparent. Nevertheless, Bhaskar continued to work hard build the organization and look for new revenue sources.

18.    As an entrepreneur, shareholder and executive of the company, Bhaskar invited his colleagues from previous employment, friends and relatives (including an elder brother) from well-established jobs into the company. Bhaskar developed the facilities in Chennai; single handedly opened up additional centers in Bangalore and was significantly instrumental in adding new verticals to the business. More importantly, Bhaskar began to parlay his previous relationships and contacts at various Fortune 100 companies into significant business for Atlas, so much so that the accounts he brought in now represent approximately 65% of Atlas' current revenue.

19.     Unlike his supervisory role, Bhaskar's generation of business proceeded without any restriction of his activities and was heavily encouraged by Chalamala throughout 2006 and 2007, after the incorporation of Atlas Systems, Inc. in January 2007. After that incorporation, the two men discussed Bhaskar receiving a percentage of the revenue for bringing in this substantial business. However, Chalamala suggested, and Bhaskar ultimately accepted, that rather than receive additional payments (which would negatively impact the company's cash flow), Bhaskar's stake in all of Atlas Systems would increase from 15% to 25% of the shares. There are numerous written indicia, including documents sent by Chalamala to a third-party lender, that the men agreed that Bhaskar was to receive 25% across all entities.

20.     Throughout late 2006 and most of 2007 and 2008, Bhaskar, within his rights as shareholder and COO, repeatedly asked Chalamala for financial information concerning the Atlas entities in the United States. Whenever U.S. financials were requested by Bhaskar, Chalamala attempted to divert Bhaskar with additional assignments or asked him to provide additional reports on unrelated issues but at the same time continually promised to provide such information. Chalamala only provided small fragments of information that made it impossible to discern Atlas Systems Inc.'s' true financial picture.

21.     Throughout 2007 and 2008, the disputes between Chalamala and Bhaskar increased exponentially. Chalamala continually undermined Bhaskar's directives, issued conflicting instructions, and micromanaged Bhaskar. The two disagreed on their various roles and the roles of subordinates. Bhaskar repeatedly asked Chalamala for his growth progress and expressed his willingness to take on additional responsibilities. Chalamala

promised Bhaskar new responsibilities, including defining him as his successor, and that he would provide him the access to the financials of the U.S. corporations, ultimately transferring the responsibility of finances to him. Bhaskar's frustration increased as many of the oral promises were not met and his growth and role was not provided.

22. Throughout this period Atlas continued to use their New Jersey and Indian addresses and companies interchangeably. The website lists Bhaskar as COO of all entities and mentions all the locations. Chalamala mandated that all the contracts signed with customers be signed through Atlas Systems Inc., and not with Atlas Systems Private Limited, unless warranted. For example in April 2007, Chalamala instructed Bhaskar that an application for work filed with the Indian government (STPI Blr) should utilize the company's New Jersey address.

23. In approximately late 2007 and early 2008, while Bhaskar was successfully obtaining increased business for Atlas, Chalamala refused to acknowledge Bhaskar's status as his successor and the two men continued to disagree about management of the company. Tension between the men would abate only so long as Bhaskar did not ask for further financial information.

24. During this period Bhaskar believed that the Board of Directors of Atlas Systems consisted of Chalamala, himself, Ellis, Kulbushan Sharma and Manoj Kumar Mulasi of Chennai, India, although there were no formal meetings for Atlas Systems Inc. These five individuals referred to themselves as the Board and were involved in email exchanges involving "board" issues. In late 2008, almost two years after Chalamala created Atlas, Ellis, at Chalamala's request circulated a draft shareholder agreement for Atlas Systems Inc which recognized these individuals as the Board. Throughout the

relevant period, Chalamala has exerted significant influence on the other board members as CEO of all of the Atlas entities, his stake holding percentage as well as other factors, such as his part in founding the companies, his being a manager for Manoj Kumar Mulasi in his past employment, and Ellis having worked for a customer of Chalamala's past employer.

25.    In or about late 2007, Bhaskar notified Chalamala and other Board members that he and his wife had made certain real estate investments with a promised return. Many persons including Chalamala and his wife, made similar investments with Bhaskar, and Atlas also invested funds that could be used either for property acquisition for the company or with promised returns..

26.    In or about January 2008, Bhaskar's accountant recommended he create a separate entity rather than use personal accounts to make the investments. During this period Chalamala assigned Ellis to determine whether Bhaskar had been self-dealing. Ultimately, Chalamala agreed with Bhaskar that no self-dealing had occurred and also agreed that Bhaskar would serve as his successor in the Company and gave Bhaskar some access to corporate bank account records. In addition, because the investments lost significant value and the developer was unable to meet his commitments, Bhaskar borrowed against his home in order to keep the other investors whole. The gains that Atlas had in this investment were significantly higher than the bank interest that Atlas was able to obtain for its term deposits.

27.    However, upon information and belief Chalamala has engaged in his own self-dealing by stating that there are past dues to him and Ellis; trying to create additional ventures (a joint venture with a partner for health care publishing vertical, another

partnership with some of the senior members of Atlas customers in a new venture with Bhaskar having a limited information and involvement in discussions); and payouts going to an entity called Technomentum, which is owned by individuals known to Chalamala.

28.    Over the next year, Bhaskar aggressively brought in several important accounts without any thought as to protecting any personal interest in the accounts, but during that same time period Chalamala attempted to wean away the accounts Bhaskar originated and continued to build.    Specifically, Chalamala assigned Ellis, who previously had no responsibility for the accounts Bhaskar originated, as an "account manager" with the goal that he take over Bhaskar's relationships.

29.    In late 2008, Chalamala brought in a new accountant for U.S. operations with whom he was personally acquainted. Upon information and belief, Chalamala used this accountant to audit the India accounts to verify that there was no self-dealing by Bhaskar. However, Bhaskar insisted on receiving detailed information regarding the U.S financial accounts as he found new cost elements, such as so-called "past due amounts" to Chalamala and payouts to Technomentum in the reports shared with him.  Bhaskar then posed a series of questions to Chalamala about expenditures, payouts and other contracts and asked for an audit of U.S. accounts.

30.    Around the same time, Chalamala provided reports stating that the Bangalore Center that Bhaskar developed and a significant account that Shyam originated were each showing a low profit margin. Bhaskar asked for further financial information in order to analyze the accounts and investigate U.S. entity's profit calculation. However, Chalamala refused to share any information except limited information for one quarter, all the while insisting that detailed information had been shared. After being confronted,

10

Chalamala acknowledged that detailed financials were not shared but then demanded that a new shareholder agreement with restrictive covenants and confidentiality provisions must be signed or no further information would be provided to Bhaskar.

31.    At around the same time, Chalamala insisted that Bhaskar sign a contract between Atlas Systems Inc., and Atlas Systems Private Limited (through which the payments to India entity occurs) which Bhaskar believed that would significantly lower the revenue and gains of the India entity.  Chalamala insisted that contract be signed by Bhaskar, claiming it was part of the U. S. auditor recommendations, but he refused to provide the recommendations despite Bhaskar's repeated requests.

**C.    Extensive Indicia of Bhaskar's 25% Stock Ownership**

32.    Despite his repeated requests written and oral, Bhaskar was never provided with any share certificates or ownership documents for either U.S. entity.  However, in early 2006, Bhaskar was listed as a director of Atlas Systems Private Limited, owning approximately 2200 shares or nine (9) percent of the company's available shares.  Chalamala is shown on the same filing with 17,600 shares or approximately 72 percent of available shares.  While the official records submitted by Atlas Systems Private Limited does not show Chalamala as holding any corporate office, Chalamala has represented himself as the CEO of the Indian entity.

33.    Bhaskar has in the past executed numerous contracts on behalf of Atlas Systems Inc.  For example on or about March 1, 2007, Bhaskar executed a master agreement between Atlas Systems Inc and his former employer Dell U.S.A., L.P. in which Bhaskar is identified as "COO" of Atlas Systems Inc.  On or about October 1,

11

2007, signed a statement of work between Atlas Systems Inc and a large New Jersey-based pharmaceutical company 10/17/07.

34.     In an email sent by Chalamala to Bhaskar on or about July 19, 2007, Chalamala asked Bhaskar whether he wanted to get involved in partnership discussion, noting. **"It is important that you understand the whole history, as now you are the key stake holder."** Other emails from the same period from Chalamala stated that other stakeholders receive below-market salaries, although proof of this was never provided to Bhaskar.

35.     In an email in early January 2008, Bhaskar again asked Chalamala for stock certificates and for the first time learned that the "partnership" of the close corporation was never formalized. Bhaskar had been asked whether he wanted to assist in helping create the "partnership" agreement in or about June 2007, six months after the Company had been formed by Chalamala with him as sole shareholder.

36.     Moreover, Chalamala told Bhaskar numerous times orally and in writing that it was his intention to have separate legal entities in the United States and India to make it easier to obtain credit, but that the ownership interest and arrangements among the parties cut across all entities. For example on June 23, 2008, Chalamala said in an email to Bhaskar that separation of the U.S. and India entities were required to obtain a line of credit. Chalamala told Bhaskar that he was awaiting Bhaskar's feedback regarding a shareholder agreement and that, **"once you ok, let us send it to the group and formalize it for all entities."**

37.    Nevertheless, Bhaskar did not learn until 2009 that Chalamala has failed to provide ownership interests for any other shareholder and Atlas Systems Inc. was formed and remains a sole proprietorship with Chalamala as the sole shareholder and officer.

38.    In May 2008, Atlas Systems Inc. sought a line of credit from Merrill Lynch.  On or about May 25, 2008, in an email responding to a query from Omar Rasheed, a vice president of Merrill Lynch in Yardley, PA, seeking information on the identity of Atlas' principal shareholders, Chalamala wrote that "current ownership % - venu [Chalamala] – 35%, Brandon [Ellis] 20%, Shyam [Bhaskar] 25% (lives in India), Manoj 9% (lives in India), Kul – 9% (lives in India).  On May 30, 2008, Chalamala wrote to Bhaskar to explain that "I am going ahead with a LOC (line of credit) with ML (Merrill Lynch). We will keep entities independent to contain liability. ML wants local guarantors – similarly Indian banks may want local guarantors, and that's where you may want to use yours."

39.     Similarly on August 8, 2008, a representative of the New Jersey pharmaceutical company that Bhaskar brought into Atlas as a client sought further information on Atlas Systems Inc.'s ownership and Chalamala responded in an email to Bhaskar that: **"We will send 3 names (you, me and Brandon [Ellis]) and we will qualify as majority stake holders."**

40.    In late 2008, Chalamala and/or Ellis with the approval of Chalamala circulated a draft shareholder agreement for Atlas Systems Inc., listing the same five shareholders (Chalamala, Ellis, Bhaskar, Sharma and Mulasi).  Bhaskar sent extensive questions and comments back to the other shareholders in reaction to this draft on or about January 30, 2009.

41. Further, Bhaskar was issued a personal Bank of America Check Card with the last four digits of 5901 in the name of Atlas Systems Inc.

42. The Atlas website, www.atlassystems.com, until Bhaskar's constructive discharge in June 2009, listed him as COO, Chalamala as Chairman and CEO and Brandon Ellis as President.

## D.  Further Acts of Oppression against Bhaskar

43. Chalamala has engaged in a blatant and systematic pattern of oppressive, egregious and unfair behavior towards Bhaskar in violation of his fiduciary duties and in violation of N.J.S.A. 14A:12-7 and other applicable law. Among the oppressive actions Bhaskar experienced at the hands of the defendants were refusal to provide sufficient information for which to make reasoned decisions (either as a shareholder or COO), failure to provide any dividend or proof of corporate ownership, micromanagement of all functions, countermanding of directions, unilateral decision making by Chalamala, and continual struggle to have his corporate concerns and voice heard.

44. With the presumable intent of terminating Bhaskar, Chalamala never acted on the Indian entity company secretary's recommendation that Bhaskar's brother, an Atlas Systems Private Limited employee, be named a director of the company per the guidelines set by the Indian company rules.

45. In late 2008 and early 2009, Bhaskar continued to seek additional financial and other information from Chalamala, which was essentially refused. At some points Bhaskar threatened to leave with his clients if he was not provided with the management role he was promised. Defendant used these statements, made out of pure desperation by Bhaskar as a result of defendants' personal and professional oppression, as an excuse to

freeze him out of any material decision making role, rather than following through on the promises he made.

46.     More recently, Bhaskar introduced another very senior and respected connection to Chalamala. Chalamala completely by-passed Bhaskar and engaged him in the business dealings, leveraging Bhaskar contacts for his own gain.

47.     The oppression became such that Chalamala actually documented Bhaskar's freeze-out from management and the conditions for Bhaskar's constructive discharge. On or about October 27, 2008, a new Atlas Systems Organizational chart was issued which showed Bhaskar as titular second in command but with every Practice Head in the organization reporting directly to Chalamala. Chalamala's promise that Bhaskar would be announced as Chalamala's successor and the future CEO was never made official in that chart or elsewhere. In addition, Chalamala, without Bhaskar's approval and knowledge, provided Ellis the account management responsibility of the accounts Bhaskar was intended to have and insisted that Bhaskar share all the client related information with Ellis.

48.     Chalamala had at various points of time taken unilateral decisions that interfered directly with Bhaskar's role and responsibilities. For example, in the large pharmaceutical account which Bhaskar brought in and had an account management role, Chalamala engaged sub contractors into the project without letting the customer and Bhaskar know, causing inquiries by the customer which could not be readily answered by Bhaskar. Similarly, in another instance, Chalamala closed a hiring position with a particular resource without informing Bhaskar or the Indian team working for that client.

49.     Chalamala systematically refused to share information regarding other customers. Despite repeated requests to set up meetings with other customers while Bhaskar was in the USA during a visit, Chalamala ignored such requests.

50.     Ultimately, Chalamala, using Ellis and himself, effectively removed Bhaskar's ability to perform his job responsibilities within the company. To resolve the pending issues, his roles and responsibilities and the future steps, Bhaskar traveled to the USA in the first quarter of 2009, and discussed these disputes with Chalamala. Chalamala agreed to give him the sales and financial responsibilities with immediate effect and define him as a successor. However, while Bhaskar was still in the USA attempting to build business, Chalamala by-passed the role he agreed to give Bhaskar for running finances and he went ahead and forced India to sign the contract with Atlas Systems Inc. Bhaskar again insisted that he be allowed to handle the finances which Chalamala again controlled. Frustrated and exhausted by this passive-aggressive and duplicitous treatment, Bhaskar had no choice but to resign by email as of February 15, 2009.

51.     Chalamala in the past has similarly engaged in actions designed to frustrate senior people in the company who did not act as sycophants; at least two practice heads and certain accountants also submitted their resignations as a result of Chalamala's actions.

52.     Chalamala also made a point of attempting to deprive Bhaskar of his agreed-upon bonus and salary increases. Despite the fact that Bhaskar was responsible for at least 65% of the Company's revenues, he insisted that Bhaskar's salary was "on the

high side," and when challenged, backtracked and agreed Bhaskar was being paid – even apart from the business he brought in – a market wage.

53.    However, as the tensions between the men rose, Chalamala took out his frustration on the heads of the practice teams who were drawing salaries in India by withholding their bonuses, in effect saying that because he could not agree on a bonus for Bhaskar, he would withhold all bonuses. This directly affected Bhaskar's brother, who is a practice head.

54.    These behaviors are consistent with that experienced by Bhaskar, forcing Bhaskar to resign.

55.    Following this constructive discharge, however, between February 2009 and March 2009, Chalamala again promised Bhaskar he would enhance his role and asked Bhaskar for his input on several issues. Bhaskar provided Chalamala various options. Chalamala sought time, insisted that Bhaskar not discuss his resignation with others for the fear of losing business and in the end, on the promised date, again deferred his decision to the "board." Bhaskar repeatedly insisted on reviewing the U.S. financial information to determine whether there were any irregularities. No information was provided.

56.    Finally, Bhaskar, using his privileges with an Atlas Systems Inc. bank account, attempted to access the online information and let Chalamala know. Immediately, Chalamala responded, in an email dated March 17, 2009 that he was accepting Bhaskar's resignation "as COO of Atlas Systems Private Limited," effective March 20, 2009 and was replacing him with Ellis. This was constructive termination by Atlas Systems

17

57.    Although as demonstrated by evidence set forth above, Bhaskar was clearly the COO of Atlas Systems Inc. as well, Chalamala's actions were a subterfuge to attempt to create a record of Bhaskar being employed only by the Indian entity.

58.    On March 20, 2009, Chalamala extended the notice period to the full three months, the maximum terms required by the employment agreement after resignation. However, on April 11, 2009, before the three month period elapsed, Bhaskar withdrew his resignation and promised to remain with Atlas for at least two years as Chalamala and the other board members insisted that the roles and responsibilities of Bhaskar can be defined on his commitment to Atlas.

59.    Although Bhaskar was sent a draft shareholder agreement for Atlas Systems Inc. in late 2008, in early 2009, as the conflict between Bhaskar and Chalamala intensified, a new draft was circulated, this time for Atlas Systems Private Limited, ostensibly to limit Bhaskar's role and to claim that he had no rights to Atlas Systems, Inc. However, the Private Limited is an Indian company and the shareholder agreement was in a U.S. corporate form, drafted, upon information and belief, by New Jersey counsel for Atlas Systems Inc., which is not licensed in India, and was clearly sent as a subterfuge so that the defendants can assert that Bhaskar owns only 9% of the Indian entity

60.    The revised Atlas Systems Private Limited agreement is in and of itself evidence of shareholder oppression. It reads like an employment agreement containing extensive restrictive covenants for shareholders that were both onerous and adhesive. These restrictive employment and solicitation covenants would last five years after employment into a shareholder agreement – rather than into an employment agreement -- without any compensation for that limitation and without any protection whatsoever from

18

unreasonable termination and no mechanism for voluntary termination. Under this draft agreement, the Company could terminate Mr. Bhaskar – or any shareholder -- and he would not be able to compete for between more than 2 and 6 years (depending on the date of sale of the shares) and would be remunerated for his shares using some unknown method of valuation which would inevitably undervalue them.

61. Bhaskar was presented with this agreement and told that he must approve it in or about April 2009. There were numerous blanks and missing sections to the Agreement that ultimately provide little more than boilerplate language and leave open as many questions as answers, such as shares outstanding, past loans and obligations to existing shareholders and a valuation formula. When Bhaskar raised questions and sought additional documents regarding this agreement, Bhaskar was then characterized by Chalamala and Ellis as being "intransigent".

62. Despite the March 17, 2009 email described above, Chalamala and other shareholders essentially ignored Bhaskar's withdrawal of his resignation, and continued to deal with him in typical fashion, including requiring him to fill out a self-evaluation form for the previous period and asking him for his "career aspirations." There were also discussions about Bhaskar taking an increased role in management. However, all of this dialogue and encouragement was a pretext to lull Bhaskar into believing that he had continued employment while they secretly attempted to wrest control of his accounts.

63. However, after Bhaskar retained counsel, defendants again raised his resignation "as COO of Atlas Systems Pvt. Ltd." and then moved to terminate him in mid-May 2009, but agreed to extend the termination date until June 10, 2009, the day that settlement talks ended.

19

64.    As a result, Bhaskar has received no bonus for the fiscal year 2008 - 2009, no dividend or returns for his shares, no stock certificates, and was presented with draft shareholder agreements designed to bind him to Atlas for an extended period as no more than an indentured servant.

## FIRST COUNT
### (Breach of Contract)

65.    Bhaskar repeats and reasserts each of the allegations contained above as if fully set forth at length herein.

66.    Pursuant to the promises made by Chalamala and the actions taken in furtherance thereof, Bhaskar was entitled to share equally in any and all distributions from Atlas and was entitled to share equally in the benefits of ownership of the Company.

67.    Bhaskar was also entitled to reasonably expect that Chalamala, his co-shareholder, would not unilaterally act in a manner designed to strip him of his shares for his own selfish pecuniary gain. Despite promises by Chalamala in writing and verbally, Bhaskar was never provided with any share certificates or other evidence that he was a shareholder.

68.    Chalamala's acts and omissions as described above were in breach of his and Atlas' contractual obligations to Bhaskar.

69.    As a direct and proximate result of Chalamala's and Atlas' contractual breaches, Bhaskar has sustained substantial damages.

## SECOND COUNT
### (Breach of the Covenant of Good Faith and Fair Dealing)

70.    Bhaskar repeats and reasserts each of the allegations contained above as if fully set forth at length herein.

71.     Implicit in the agreements between Bhaskar and Chalamala was an obligation and covenant of good faith and fair dealing which requires each party to an agreement to refrain from any act or omission to act that would injure or destroy the right of the other party to receive the fruits and benefits of the agreement between the parties.

72.     By committing acts and omissions as described more particularly above, Chalamala knowingly, willfully and intentionally failed to fulfill his implied covenants of good faith and fair dealing in his agreement with Bhaskar.

73.     As a direct and proximate result of Chalamala's breach of the covenants of good faith and fair dealing, Bhaskar has sustained substantial damages.

## THIRD COUNT
### (Breach of Fiduciary Duty)

74.     Bhaskar repeats and reasserts each of the allegations set forth above as if fully set forth at length herein.

75.     Chalamala was at all relevant times an officer and director as well as co-shareholder of Atlas Systems Inc.  Accordingly, he owed Bhaskar a fiduciary good faith obligation to discharge his duties with due care, skill, prudence and diligence.

76.     Notwithstanding his fiduciary obligations and relationship to Bhaskar, Chalamala placed his own interests ahead of those of his co-officer, director and shareholder, Bhaskar, and committed acts and/or omissions to act as set forth above in violation of his fiduciary obligations.

77.     By committing the acts and omissions as set forth above, Chalamala, failed to act with the care, skill, prudence and diligence required by law and, thus, failed to discharge the fiduciary duties they owed to Bhaskar.

78. As a direct and proximate result of Chalamala's fiduciary breaches as set forth above, Bhaskar has sustained substantial damages.

## FOURTH COUNT
### (Minority Shareholder Oppression Pursuant To N.J.S.A. 14A:12-7)

79. Bhaskar repeats and reasserts each of the allegations contained above as if fully set forth herein.

80. At all relevant times, Bhaskar was and is an officer, director and 25% shareholder of Atlas.

81. Notwithstanding Bhaskar's status as a significant shareholder as well as an officer and director of Atlas, Chalamala, in conjunction with other shareholders, engaged in a systematic pattern of oppressive and unfair behavior towards Bhaskar in violation of N.J.S.A. 14A:12-7, as set forth in detail above.

82. Chalamala in particular has abused his authority as an officer and director of Atlas and has engaged in acts of oppression towards Bhaskar and otherwise treated Bhaskar unfairly in his capacity as a shareholder Atlas, as set forth above.

83. Chalamala' acts of oppression towards Bhaskar, as described more particularly above, have impaired the ability of Atlas to make decisions concerning its respective business and affairs and at times rendered Atlas unable to function normally in the best interests of the shareholders.

84. Chalamala's acts of oppression towards Bhaskar, as described more particularly above, have defeated Bhaskar' monetary and non-monetary expectations concerning his continued participation in Atlas.

85. As a result of Chalamala's acts of oppression towards Bhaskar as described more particularly above, Bhaskar is entitled to a court-ordered buyout of his

shares of Atlas in accordance with N.J.S.A. 14A:12-7, at a purchase price equal to their respective fair market value as of the date hereof.

### FIFTH COUNT
### (Conversion)

86.     Bhaskar repeats and reasserts each of the allegations contained above as if fully set forth herein.

87.     At all relevant times herein, Bhaskar was and is a 25% shareholder in Atlas and entitled to certain benefits, including distributions and compensation, as well as the use and enjoyment of Atlas's office, employees, employee benefits, office equipment, furniture and other support.

88.     Beginning at a time unknown to Bhaskar and continuing thereafter to present, Chalamala, both individually and with other shareholders, willfully, intentionally and maliciously converted Atlas's assets, as identified more particularly above, for his and their own use, enjoyment and personal gain, and to the detriment of Bhaskar.

89.     As a direct and proximate result of Chalamala's wrongful conversion of Atlas's assets as set forth above, Bhaskar has sustained substantial damages.

### SIXTH COUNT
### (Tortious Interference with Prospective Economic Gain)

90.     Bhaskar repeats and reasserts each of the allegations contained above as if fully set forth herein.

91.     Bhaskar reasonably anticipated realizing an economic gain and benefiting from his association with Atlas.

92.     Bhaskar reasonably anticipated and understood that Chalamala, his fellow shareholder, officer and director, would refrain from interfering with Bhaskar' reasonable expectation of economic gain as a shareholder and employee of Atlas.

93.     Bhaskar also reasonably anticipated that the clients he brought into Atlas. would not be affirmatively interfered with and relationships interfered with by Chalamala.

94.     Nevertheless, Chalamala, knowingly, intentionally and maliciously interfered with Bhaskar' business, reputation, goodwill and reasonable expectation of future economic gain by engaging in the acts and omissions set forth more particularly above.

95.     The acts and omissions of Chalamala, as described above have directly and proximately caused Bhaskar to sustain substantial damages, including lost business, opportunities, future profits and irreparable harm to his business and reputation.

## SEVENTH COUNT
### (Fraud)

96.     Bhaskar repeats and reasserts each of the allegations contained above as if fully set forth herein.

97.     As a result of the transfers, conveyances and diversions of Atlas Systems Inc.'s assets and other misconduct described above, Chalamala in furtherance of his illicit scheme to strip Atlas Systems Inc. assets for his own benefit and to the detriment of the Company and Bhaskar, made numerous representations of fact and concealed from Bhaskar representations of material facts regarding his self-dealing that were knowingly false when made.

98.     Chalamala made these representations of fact and concealed from Bhaskar representations of material facts with the intent to cause Bhaskar to rely upon such representations and omissions. For example, Chalamala represented that Bhaskar owns 25% of the shares of all three Atlas entities, yet Atlas has reported to government agencies that he owns no percentage of Atlas Productions, 9% of Atlas Systems Private Limited and no percentage of Atlas Systems Inc. In addition, Chalamala fraudulently induced Bhaskar to agree that he not receive commission remuneration for bringing in Atlas' most substantial clients in exchange for an additional 10% of equity in all entities, and Atlas has paid neither commissions nor the additional equity.

99.     As set forth above, Chalamala has also engaged in self-dealing which has deprived Atlas of assets, to the detriment of Bhaskar.

100.    Bhaskar reasonably relied upon the representations of fact and omissions of material fact made to him by Chalamala and his fellow shareholders concerning the assets, business and operations of Atlas.

101.    The representations of fact and omissions of material facts made by Chalamala caused Bhaskar to sustain substantial damages.

### EIGHTH COUNT
### (Quantum Meruit)

102.    Bhaskar repeats and reasserts each of the allegations contained above as if fully set forth herein.

103.    Bhaskar brought in considerable business for Atlas and is entitled to remuneration or commission for his work in that regard. Atlas has engaged such third party service providers, paying commissions of between 7.5% to 20% of the revenue.

104.    As a result of the failure of Atlas and Chalamala to remunerate Bhaskar for his work in bringing Atlas the bulk of its clients, Chalamala caused Bhaskar to sustain substantial damages

## NINTH COUNT
### (Unjust Enrichment)

105.    Bhaskar repeats and reasserts each of the allegations contained above as if fully set forth herein.

106.    As a result of the acts and omissions of Chalamala as described more particularly above, Chalamala and the other shareholders have been unjustly enriched, to the detriment of Bhaskar. Being a 25% share holder, Bhaskar's accounts brought in approximately 65% of the revenue. The company and the shareholders gained significantly through Bhaskar's contributions. The other shareholders' inability to add proportional clients and revenue is detriment to Bhaskar's economic gains.

## TENTH COUNT
### (Inspection of Atlas's Books and Records Pursuant To N.J.S.A. 14A: 5-28)

107.    Bhaskar repeats and reasserts each of the allegations contained above as if fully set forth herein.

108.    At all relevant times, Bhaskar was and is a shareholder of Atlas.

109.    Pursuant to N.J.S.A. 14A: 5-28, Bhaskar has a statutory right to inspect Atlas's books and records upon reasonable notice.

110.    Atlas has nevertheless failed and refused to adequately respond to Bhaskar' repeated requests for information and documentation concerning the business and finances of Atlas.

111.   Accordingly, Bhaskar has been unlawfully deprived of information and documentation that he has a statutory right to inspect and examine.

112.   Atlas's failure to provide Bhaskar with access to Atlas's books and records has caused Bhaskar to sustain substantial damages.

## ELEVENTH COUNT
### (Accounting)

113.   Bhaskar repeats and reasserts each of the allegations contained above as if fully set forth herein.

114.   Atlas has failed and refused to respond in a satisfactory manner to Bhaskar's repeated requests for an accounting of Atlas's business activity from April 2006 to present.

115.   Upon information and belief, Atlas has engaged in numerous acts of financial impropriety unbeknownst to Bhaskar, in addition to those improprieties described in detail above.

116.   Bhaskar is entitled to an accounting of any and all of its business activity for the time period from approximately April 2006 to date.

117.   Atlas's failure to provide Bhaskar an accounting of any and all of its business activity for the time period from approximately April 2006 to date has caused Bhaskar to sustain substantial damages.

**WHEREFORE** plaintiff Shyam Bhaskar respectfully demands judgment in his favor and against defendants Atlas Systems Inc. and Chalamala as follows:

A. Awarding Bhaskar temporary, preliminary and permanent injunctive relief prohibiting any and all Defendants from:

1.  Selling, transferring, pledging, hypothecating or dissolving any of the assets of Atlas Systems Inc. pending further order of this Court;

2.  making any decisions concerning the business and operations of Atlas outside of the ordinary course of business pending further order of this Court;

3.  Engaging in any business transaction involving Atlas on the one hand and any other business or entity in which Chalamala has an interest pending further order of this Court;

4.  Diverting or withholding or threatening to divert or withhold from Atlas any payments made to or revenues generated from services rendered by Atlas in the ordinary course of business, pending further order of this Court;

5.  Transferring or soliciting any of the clients of Atlas away from Atlas to any other entity, pending further order of this Court.

B.  Declaring that Bhaskar is the owner of a 25% interest in Atlas Systems, Inc., including an identical interest in Atlas Systems Private Ltd. and Atlas Productions that is within the jurisdiction of this Court to award.

C.  Awarding Bhaskar a buyout of his ownership interest in Atlas in accordance with N.J.S.A. 14A:12-7 or the right to transfer all clients he brought into Atlas;

D.  Awarding Bhaskar an accounting and inspection of records of Atlas Systems Inc. and to the extent in the possession of Chalamala and Atlas Systems Inc., inspection of all records related to Atlas Productions and Atlas Systems Private Limited.

E.  Awarding Bhaskar compensatory, consequential and incidental damages;

F.  Awarding Bhaskar punitive damages;

28

G. Awarding Bhaskar pre-judgment and post-judgment interest;

H. Awarding Bhaskar attorneys' fees and costs of suit, on statutory and common law grounds; and

I. Awarding Bhaskar such other relief as this Court deems equitable and just.

McCUSKER, ANSELMI, ROSEN,
& CARVELLI, P.C.
210 Park Ave., Suite 3101
Florham Park, New Jersey 07932
(973) 635-6300
Attorneys for Plaintiff Shyam Bhaskar

By: _____
Bruce S. Rosen

Dated: August 27, 2009

## VERIFICATION

I have reviewed the within Verified Complaint and hereby verify that the facts as set

forth therein are true to the best of my knowledge.


By: _____

Shyam Bhaskar

Dated: August 27, 2009

R. 1:4-4(c) Certification of Genuine Facsimile Signature

I certify that the attached signature of Shyam Bhaskar on his Verification is genuine and was transmitted via PDF file and that this document or a copy with an original signature affixed will be filed if requested by the Court or a party.

BRUCE S. ROSEN

Dated: August 27, 2009

EXHIBIT B

McCUSKER, ANSELMI, ROSEN & CARVELLI, P.C.
210 Park Avenue, Suite 301
Florham Park, New Jersey 07932
(973) 635-6300
Attorneys for Plaintiff Shyam Bhaskar

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION: MERCER COUNTY
DOCKET NUMBER:

| | |
|---|---|
| SHYAM BHASKAR, | Civil Action |
| Plaintiff, | |
| v. | ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINTS |
| ATLAS SYSTEMS INC. AND VENUGOPALA CHALAMALA | |
| Defendants. | |

**THIS MATTER**, having been opened to the Court by McCusker, Anselmi, Rosen, & Carvelli, a Professional Corporation, attorneys for plaintiff Shyam Bhaskar ("Bhaskar") (Bruce S. Rosen, Esq., appearing) before the Honorable Maria Marinari Sypek, P.J. Ch., upon notice to and in the presence of counsel for defendants Atlas Systems Inc., and Venugopala Chalamala. (collectively, the "Defendants") upon application for entry of an Order To Show With Temporary Restraints pursuant to R̲. 4:52-1(a) in favor of Bhasker and against Defendants for the relief sought in Bhaskar's Verified Complaint;

**AND IT APPEARING** from Baskar's Verified Complaint, supporting certification and memorandum of law that temporary restraints are necessary to prevent irreparable harm to Bhaskar pending hearing on Bhaskar' application for a preliminary injunction;

**AND IT FURTHER APPEARING** that notice of this application has been given to Defendants and that papers comprising this application have been provided to Defendants;

**AND IT FURTHER APPEARING** that the Court, having considered the papers submitted and the arguments contained therein, and the oral arguments of counsel, and for good cause otherwise appearing;

IT IS on this _____ day of _____, 2009,

**ORDERED** that defendant Defendants show cause at a hearing before this Court at _____ o'clock in the a.m./p.m. on the _____ day of September 2009 or as soon thereafter as counsel may be heard, why a **PRELIMINARY INJUNCTION** should not be entered in favor of Bhaskar and against each and every of the Defendants prohibiting Defendants as follows:

Defendants must cease and desist immediately from:

    1.      Selling, transferring, pledging, hypothecating or dissolving any of the assets of Atlas Systems Inc. pending further order of this Court;

    2.      making any decisions concerning the business and operations of Atlas outside of the ordinary course of business pending further order of this Court;

    3.      Engaging in any business transaction involving Atlas on the one hand and any other business or entity in which Chalamala has an interest pending further order of this Court;

    4.      Diverting or withholding or threatening to divert or withhold from Atlas any payments made to or revenues generated from services rendered by Atlas in the ordinary course of business, pending further order of this Court;

5.     Transferring or soliciting any of the clients of Atlas away from Atlas to any other entity, pending further order of this Court.

### TEMPORARY RESTRAINING ORDER

Pending the return date of the within Order To Show Cause, Bhaskar' application for a temporary restraining order be, and hereby is, **GRANTED** and the Defendants be, and hereby are, **TEMPORARILY RESTRAINED** and **ENJOINED** in accordance with R. 4:52-2 as follows:

Defendants must cease and desist immediately from:

6.     Selling, transferring, pledging, hypothecating or dissolving any of the assets of Atlas Systems Inc. pending further order of this Court;

7.     Making any decisions concerning the business and operations of Atlas outside of the ordinary course of business pending further order of this Court;

8.     Engaging in any business transaction involving Atlas on the one hand and any other business or entity in which Chalamala has an interest pending further order of this Court;

9.     Diverting or withholding or threatening to divert or withhold from Atlas any payments made to or revenues generated from services rendered by Atlas in the ordinary course of business, pending further order of this Court;

10.     Transferring or soliciting any of the clients of Atlas away from Atlas to any other entity, pending further order of this Court.

And it is further **ORDERED** as follows:

1.     Bhaskar's application to compel limited discovery of Defendants on an expedited basis be, and hereby is, **GRANTED**, and Bhaskar may: (1) Serve Notice To

3

Produce Documents upon Defendants within _____ days from the date of this Order, to which Defendants must produce responsive documents within seven (7) days thereafter; and (2) conduct the depositions upon oral examination before a person duly authorized to administer oaths under the laws of the State of New Jersey of Venugopala Chalamala and Brandon Ellis, continuing day-to-day thereafter until completed at the offices of McCusker, Anselmi, Rosen & Carvelli, P.C., 210 Park Ave., Suite 301, Florham Park, NJ 07932.

3. Defendants shall file and serve an Answer or other responsive pleading within 20 days from the date of service of the Verified Complaint;

4. If any Defendant fails to serve a responsive pleading upon Bhaskar within 20 days from the date of service, Bhaskar may move unopposed to have judgment by default entered against any such Defendant for the entire relief demanded in the Verified Complaint;

5. No summons need be issued;

6. The restraints contained in this Order shall continue until modified by further order of this Court; and

7. Any party may move to modify the restraints contained herein upon _____ business days notice to the other party.

**SO ORDERED.**

_____
Maria Marinari Sypek, P.J. Ch.

4

EXHIBIT C

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION: MERCER COUNTY
DOCKET NUMBER:

SHYAM BHASKAR,

                 Plaintiff,

        v.

ATLAS SYSTEMS INC. and VENUGOPALA
CHALAMALA,

                 Defendants.

Civil Action

---

## BRIEF IN SUPPORT OF PLAINTIFF SHYAM BHASKAR'S
## ORDER TO SHOW CAUSE

---

MCCUSKER, ANSELMI, ROSEN
& CARVELLI
A Professional Corporation
210 Park Avenue, Suite 301
Florham Park, New Jersey 07932
(973) 635-6300
Counsel for Plaintiff Shyam Bhaskar

On the Brief:
Bruce S. Rosen
Kathleen A. Hirce

Of Counsel:
Paul F. Carvelli

# TABLE OF CONTENTS

Pages

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................... 4

    A.    The Parties ................................................................................... 4
    B.    Background Allegations ............................................................... 5
    C.    Bhaskar's employment by the generic "Atlas Systems" ............. 5
    D.    Disputes between Bhaskar and other Shareholders ..................... 7
    E.    Extensive Indicia of Bhaskar's 25% Stock Ownership .............. 11
    F.    Further Acts of Oppression Against Bhaskar ............................. 14

LEGAL ARGUMENT ....................................................................................... 20

    I.    BHASKAR IS ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF .......... 20

        A.  Bhaskar Will Suffer Irreparable Injury Absent The Preliminary
            Injunctive Relief Sought .................................................... 21
        B.  Injunctive Relief Should Be Granted Because Bhaskar Enjoys
            A Likelihood Of Success On the Merits ............................... 22
        C.  The Relative Balance of Hardships Weigh Heavily In Favor Of
            Granting Bhaskar The Injunctive Relief Sought .................. 23

    II.    BHASKAR IS AN OPPRESSED MINORITY SHAREHOLDER
        WITHIN THE MEANING OF N.J.S.A. 14A:12-7 ............................. 23

    III.    THIS COURT SHOULD GRANT BHASKAR'S APPLICATION FOR
        EXPEDITED DISCOVERY ......................................................... 27

CONCLUSION .................................................................................................. 29

# TABLE OF AUTHORITIES

## STATE CASES

Balsamides v. Perle, 160 N.J. 352 (1999) ................................................................20

Brenner v. Berkowitz, 134 N.J. 488 (1993)................................................24, 25, 26

Citizen Coach Co. v. Camden Horse R.R. Co., 29 N.J.Eq. 299 (E. & A. 1978)..........................20

Crowe v. DeGioia, 90 N.J. 126 (1982)................................................................20, 21, 22

Evening Times Printing and Publishing Co. v. American Newspaper Guild,
    124 N.J.Eq. 71 (E. & A. 1938) ................................................................20

Muellenberg v. Bikon Corporation, 143 N.J. 168 (1996)................................20, 25

Poff v. Caro, 228 N.J.Super. 370 (Law Div. 1987) ................................................23

Suenram v. Society of Valley Hosp., 155 N.J.Super. 593 (Law Div. 1977) ................23

Trisolini v. Meltsner, 23 N.J.Super. 204 (App. Div. 1952)................................20

Zoning Bd. Of Adjustment of Sparta Twp. v. Service Electric Cable Television of N.J.,
    Inc., 198 N.J.Super. 370 (App. Div. 1985)................................................21, 23

## STATUTES

N.J.S.A. 14A:12-7 ................................................................in passim

R. 4:10-4 ................................................................27

R. 4:10-3 ................................................................27

R. 4:14-2 ................................................................27

R. 4:18-1 ................................................................27

## PRELIMINARY STATEMENT

Plaintiff Shyam Bhaskar, PhD respectfully submits this brief in support of his application for an Order To Show Cause With Temporary Restraints against defendants Atlas Systems, Inc. ("Atlas" or "the Company") and Venugopala Chalamala ("Chalamala") (collectively, the "Defendants").

This action is brought on behalf of Bhaskar for immediate injunctive relief against and damages primarily from Chalamala, his co-shareholder in Atlas Systems, three companies – one in New Jersey (Atlas Systems Inc.), one in India and one incorporated in Texas that were operated as one interchangeable entity.

This action is brought on behalf of Bhaskar for a declaratory judgment that Bhaskar is the equitable owner of 25% of Atlas Systems Inc., for injunctive relief against and damages from Defendants, a declaration of minority shareholder oppression pursuant to N.J.S.A. 14A:12-7 (including a forced purchase of Bhaskar's shares), fraud, breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, conversion, quantum meruit, unjust enrichment and for an immediate accounting, access to books and records of the company, expedited discovery, and an order requiring the Company maintain the status quo.

Chalamala has engaged in a blatant and systematic pattern of oppressive, egregious and unfair behavior towards Bhaskar in violation of his fiduciary duties and in violation of N.J.S.A. 14A:12-7 and other applicable law. Among the oppressive actions Bhaskar experienced at the hands of the Defendants were refusal to provide sufficient information for which to make reasoned decisions (either as a shareholder or COO), failure to provide any dividend or proof of corporate ownership, micromanagement of all

1

functions, countermanding of directions, unilateral decision making by Chalamala, continual struggle to have his corporate concerns and voice heard and ultimately Bhaskar's constructive discharge. Only immediate injunctive relief will give Bhaskar an opportunity to determine the extent of Atlas' resources, preserve it, end the oppression and other improper conduct by Chalamala, and force a sale of Bhaskar's shares at a market price.

Each of Chalamala's acts as set forth in detail below has caused and will continue to cause substantial damages and irreparable harm to Bhaskar and to Atlas' business operations and reputation. Chalamala recruited Bhaskar, a PhD well-regarded in the industry, as the Company's COO and a partner in running the operation with a substantial share ownership - only to relegate him to the role of subordinate among subordinates. Despite continually representing to Bhaskar and third parties that Bhaskar was a 25% owner of Atlas Systems Inc. and the ownership percentages applied across the Board to all Atlas entities, Chalamala never registered the shares in the New Jersey company in Bhaskar's name, although he made himself the sole shareholder, and never increased Bhaskar's ownership of the Indian Company (Atlas Systems Private Ltd.), beyond 9%, nor ever gave Bhaskar any ownership interest in the Texas company.

Chalamala continually withheld crucial details of the financial operations from Bhaskar, who is single handedly responsible for bringing in at least 65% of Atlas' current business. When Chalamala finally got around to distributing a proposed shareholder agreement, it was an adhesive document designed to keep Bhaskar from ever competing with the Company and without the ability to practically sell his shares.

2

Under these circumstances, immediate injunctive relief is warranted to prevent Chalamala from further breaching his lawful and fiduciary obligations to the Company and to Bhaskar and, also, from further damaging the value, reputation and customer relationships of the Company.

## STATEMENT OF FACTS[1]

A.    The Parties

Plaintiff Shyam Bhaskar ("Bhaskar") is an individual residing at Apartment # 402, 4th Block, Jains Prakriti, K R Road, Banashankari II Stage, Bangalore, INDIA 560 070. Bhaskar served as the Chief Operating Officer as well as a shareholder of all Atlas entities since he became an officer and shareholder on or about June 1, 2006 until his constructive discharge in June 2009. Bhaskar, who has a PhD in Engineering as well as two masters degrees in Business and Manufacturing Systems from the University of Wisconsin, prior to joining Atlas held a senior role with international corporations such as Dell, Inc. and i2 Technologies. He is well-recognized and respected in his industry and won various awards including the office of the Chair award from Michael Dell, CEO of Dell Inc.

Defendant Atlas Systems, Inc. ("Atlas" or the "Company") is a New Jersey corporation with a principal place of business at 5 Independence Way, Suite 200, Princeton, New Jersey 08540. Before incorporating in New Jersey on or about January 14, 2007, Atlas Systems, upon information and belief, operated as a Texas Corporation named Atlas Productions with offices at 275 Madison Avenue, New York, New York. An Indian company, Atlas Systems Private Limited, operates with registered offices in Chennai, India with Venugopala Chalamala as the majority shareholder and has served as an offshore delivery center for Atlas Productions and/or Atlas Systems Inc. since its incorporation in 2003.

---

[1] The facts as set forth herein have been attested to in the Verified Complaint by plaintiff Shyam Bhaskar.

4

Defendant Venugopala Chalamala ("Chalamala") is an individual residing in Plainsboro, New Jersey. At all relevant times, Chalamala has served as CEO of all three Atlas entities.

### B.    Background Allegations

As set forth below, the individual defendants, particularly Chalamala, have engaged in numerous acts intended to oppress Bhaskar's rights as a COO and shareholder and while at the same time enriching themselves at Bhaskar's and Atlas' expense. It was Bhaskar's expertise and relationships which have provided the company with more than 65% of its client base, accounts which are, upon information and belief continuing to gain because the clients were not informed that Bhaskar was constructively discharged from his role as COO. Only this Court's immediate intervention, through ordering an accounting, access to books and records, expedited discovery and maintaining of the status quo, can provide Bhaskar an opportunity to determine the corporation's worth before its assets are diminished or dissipated because of the oppression of the individual defendants.

### C.    Bhaskar's employment by the generic "Atlas Systems"

The following background allegations are as set forth in the Verified Complaint ("Complaint") and in the documents attached to the Certification of Bruce S. Rosen. Atlas is believed to have been formed in May 2003 by Defendants Chalamala, who had earlier been employed by Changepond Technologies, and by Brandon Ellis, who was with J.D. Power and Associates, as an offshore development partner for the automotive industry. The company later branched out to provide IT services and other support for other industries. Complaint at ¶ 10.

5

"Atlas Systems" is a euphemism for three entities controlled by Chalamala which are essential one entity: Atlas Productions, which initially hired Bhaskar in 2006; the Indian corporation, Atlas Systems Private Limited, which was formed in 2003; and Atlas Systems, Inc., a New Jersey Corporation formed in 2007. Bhaskar was promised at numerous points, verbally and in emails, that ownership across each entity would be identical. Complaint ¶ 11.

In or about early 2006, Bhaskar, a former classmate and friend of Chalamala, was recruited from a senior position with Dell Inc. based in India, to join Chalamala as his partner in running and growing Atlas Systems. Chalamala originally promised that he would partner with Bhaskar and provide him significant responsibility equivalent to that of a "two in a box." To lure him into joining Atlas as a partner, Chalamala provided the valuation figures of the company at about 1.5 times revenue. Complaint at ¶12. Letter attached to the Certification of Bruce S. Rosen ("Rosen Cert") as Exh. A.

On April 7, 2007, Chalamala sent Bhaskar a formal letter offering employment with Atlas Systems in which he stated: As Chief Operating Officer of Atlas, "you will be the head of operations and will be responsible overall delivery of the organization and you will be reporting to the CEO" offering a $100,000 annual salary, plus a "variable component" of $25,000 annually and 10% equity in the company. "Based on your FY 2006 performance review we will revise the equity component to 15%," Chalamala wrote. Complaint at ¶ 13; and Rosen Cert as Exh. B.

The stationary on the letter sent by Chalamala referred to offices in New York City at 275 Madison Avenue, 6th Floor, and in Chennai, India. The letter assigned

6

Bhaskar to work in the Chennai office, but provided him notice that his "services may be transferred or assigned to any branch or working location of the company."

Attached to the letter is a Mutual Non-Disclosure and Non-Compete Agreement, (the "Agreement") which provided a Chennai address for the company, which was not referred to as Atlas Systems Private Limited, which was in existence at the time, but "Atlas Systems." The Agreement oddly referred to Bhaskar as a "subcontractor," and stated that the Agreement was governed by the laws of the State of Texas. Bhaskar is unaware that he signed this agreement, which was submitted to him and signed by Chalamala to facilitate the exchange of confidential client information for the period preceding Bhaskar actually commencing employment on June 1 2006. Complaint ¶ 14; Rosen Cert. at Exh. C.

**D.    Disputes between Bhaskar and other Shareholders**

During all of his discussions with Chalamala, Bhaskar was promised that although he ultimately reported to Chalamala, he would have independent areas of supervision and would be fully enabled to act entrepreneurially, essentially jointly running Atlas Systems with Chalamala. However, from the first announcement of Bhaskar's arrival to employees drafted by Bhaskar, Chalamala refused to share or cede any operational control and continued to micromanage Bhaskar. Complaint at ¶ 16.

As an entrepreneur, shareholder and executive of the company, Bhaskar invited his colleagues from previous employment, friends and relatives (including an elder brother) from well-established jobs into the company. Bhaskar developed the facilities in Chennai; single handedly opened up additional centers in Bangalore and was significantly instrumental in adding new verticals to the business. More importantly,

Bhaskar began to parlay his previous relationships and contacts at various Fortune 100 companies into significant business for Atlas, so much so that the accounts he brought in now represent approximately 65% of Atlas' current revenue. Complaint at ¶ 18.

Unlike his supervisory role, Bhaskar's generation of business proceeded without any restriction of his activities and was heavily encouraged by Chalamala throughout 2006 and 2007, after the incorporation of Atlas Systems, Inc. in January 2007. After that incorporation, the two men discussed Bhaskar receiving a percentage of the revenue for bringing in this substantial business. However, Chalamala suggested, and Bhaskar ultimately accepted, that rather than receive additional payments (which would negatively impact the company's cash flow), Bhaskar's stake in all of Atlas Systems would increase from 15% to 25% of the shares. Complaint at ¶ 19.

Throughout late 2006 and most of 2007 and 2008, Bhaskar, within his rights as shareholder and COO, repeatedly asked Chalamala for financial information concerning the Atlas entities in the United States. Whenever U.S. financials were requested by Bhaskar, Chalamala attempted to divert Bhaskar with additional assignments or asked him to provide additional reports on unrelated issues but at the same time continually promised to provide such information. Chalamala only provided small fragments of information that made it impossible to discern Atlas Systems Inc.'s' true financial picture. Complaint at ¶ 20.

Throughout 2007 and 2008, the disputes between Chalamala and Bhaskar increased exponentially. Chalamala continually undermined Bhaskar's directives, issued conflicting instructions, and micromanaged Bhaskar. The two disagreed on their various roles and the roles of subordinates. Bhaskar repeatedly asked Chalamala for his growth

8

progress and expressed his willingness to take on additional responsibilities. Chalamala promised Bhaskar new responsibilities, including defining him as his successor, and that he would provide him the access to the financials of the U.S. corporations, ultimately transferring the responsibility of finances to him. Bhaskar's frustration increased as many of the oral promises were not met and his growth and role was not provided. Complaint at ¶ 21.

Throughout this period Atlas continued to use its New Jersey and Indian addresses and companies interchangeably. The website mentions all the locations without regard to the individual company and Bhaskar is listed as COO of all companies. Rosen Cert. at Exh. D. Chalamala mandated that all the contracts signed with customers be signed through Atlas Systems Inc., and not with Atlas Systems Private Limited, unless warranted. For example in April 2007, Chalamala instructed Bhaskar that an application for work filed with the Indian government (STPI Blr) should utilize the company's New Jersey address. Rosen Cert. at Exh. E.

In approximately late 2007 and early 2008, while Bhaskar was successfully obtaining increased business for Atlas, Chalamala refused to acknowledge Bhaskar's status as his successor. During this period Bhaskar believed that the Board of Directors of Atlas Systems consisted of Chalamala, himself, Ellis, Kulbushan Sharma and Manoj Kumar Mulasi of Chennai, India, although there were no formal meetings for Atlas Systems Inc. Chalamala has had a significant influence on the other board members due to his role as CEO of all of the Atlas entities, his stake holding percentage as well as other factors, such as his part in founding the companies, his being a manager for Manoj

9

Kumar Mulasi in his past employment, and Ellis having worked for a customer of Chalamala's past employer. Complaint at ¶ 24.

Upon information and belief, Chalamala has engaged in his own self-dealing by stating that there are past dues to him and Ellis; trying to create additional ventures (a joint venture with a partner for health care publishing vertical, another partnership with some of the senior members of Atlas customers in a new venture with Bhaskar having a limited information and involvement in discussions); and payouts going to an entity called Technomentum, which is owned by individuals known to Chalamala. Complaint at ¶ 27

Over the next year, Bhaskar aggressively brought in several important accounts without any thought as to protecting any personal interest in the accounts, but during that same time period Chalamala attempted to wean away the accounts Bhaskar originated and continued to build. Specifically, Chalamala assigned Ellis, who previously had no responsibility for the accounts Bhaskar originated, as an "account manager" with the goal that he take over Bhaskar's relationships. Complaint at ¶ 28.

In late 2008, Chalamala brought in a new accountant for U.S. operations with whom he was personally acquainted. Upon information and belief, Chalamala used this accountant to audit the India accounts to verify that there was no self-dealing by Bhaskar. However, Bhaskar insisted on receiving detailed information regarding the U.S financial accounts as he found new cost elements, such as so-called "past due amounts" to Chalamala and payouts to Technomentum in the reports shared with him. Bhaskar then posed a series of questions to Chalamala about expenditures, payouts and other contracts and asked for an audit of U.S. accounts. Complaint ¶ 29.

10

Around the same time, Chalamala provided reports stating that the Bangalore Center that Bhaskar developed and a significant account that Shyam originated were each showing a low profit margin. Bhaskar asked for further financial information in order to analyze the accounts and investigate U.S. entity's profit calculation. However, Chalamala refused to share any information except limited information for one quarter, all the while insisting that detailed information had been shared. After being confronted, Chalamala acknowledged that detailed financials were not shared but then demanded that a new shareholder agreement with restrictive covenants and confidentiality provisions must be signed or no further information would be provided to Bhaskar. Complaint at ¶ 31.

At around the same time, Chalamala insisted that Bhaskar sign a contract between Atlas Systems Inc., and Atlas Systems Private Limited (through which the payments to India entity occurs) which Bhaskar believed that would significantly lower the revenue and gains of the India entity. Chalamala insisted that contract be signed by Bhaskar, claiming it was part of the U.S. auditor recommendations, but he refused to provide the recommendations despite Bhaskar's repeated requests. Complaint at ¶ 32

E.    **Extensive Indicia of Bhaskar's 25% Stock Ownership**

Despite his repeated requests written and oral, Bhaskar was never provided with any share certificates or ownership documents for either U.S. entity. However, in early 2006, Bhaskar was listed as a director of Atlas Systems Private Limited, owning approximately 2200 shares or nine (9) percent of the company's available shares. Chalamala is shown on the same filing with 17,600 shares or approximately 72 percent of available shares. While the official records submitted by Atlas Systems Private Limited does not show Chalamala as holding any corporate office, Chalamala has represented

11

himself as the CEO of the Indian entity. This percentage is further indication of Chalamala's fraudulent intent, as under Indian law, shareholders with less than a 10% holding cannot bring a minority shareholder oppression action. Complaint at ¶ 32; Rosen Cert. at Exh. F.

Bhaskar has in the past executed numerous contracts on behalf of Atlas Systems Inc. For example on or about March 1, 2007, Bhaskar executed a master agreement between Atlas Systems Inc. and his former employer Dell U.S.A., L.P. in which Bhaskar is identified as "COO" of Atlas Systems Inc. See Rosen Cert at Exh. G. On or about October 1, 2007, signed a statement of work between Atlas Systems Inc and a large New Jersey-based pharmaceutical company 10/17/07. Complaint at ¶ 33; Rosen Cert. at Exh. G (name of company redacted for proprietary reasons).

In an email sent by Chalamala to Bhaskar on or about July 19, 2007, Chalamala asked Bhaskar whether he wanted to get involved in partnership discussion, noting. **"It is important that you understand the whole history, as now you are the key stake holder."** Complaint at ¶ 34; Rosen Cert. at Exh. V.

In an email in early January 2008, Bhaskar again asked Chalamala for stock certificates and for the first time realized that the "partnership" of the close corporation was never formalized. Complaint at ¶ 35; Rosen Cert. at Exh. S. Bhaskar had been asked about company formation in June 2007, six months after Chalamala actually formed the Company. Rosen Cert. at Exh. T.

Moreover, Chalamala told Bhaskar numerous times orally and in writing that it was his intention to have separate legal entities in the United States and India to make it easier to obtain credit, but that the ownership interest and arrangements among the parties

cut across all entities. Rosen Cert. at Exh. H. For example on June 23, 2008, Chalamala said in an email to Bhaskar that separation of the U.S. and India entities were required to obtain a line of credit. Chalamala told Bhaskar that he was awaiting Bhaskar's feedback regarding a shareholder agreement and that, **"once you ok, let us send it to the group and formalize it for all entities."** Complaint at ¶ 36; Rosen Cert. at Exh. I. Nevertheless, Bhaskar did not learn until 2009 that Chalamala has failed to provide ownership interests for any other shareholder and Atlas Systems Inc. was formed and remains a sole proprietorship with Chalamala as the sole shareholder and officer. Complaint at ¶ 37; Rosen Cert. at Exh. J.

In May 2008, Atlas Systems Inc. sought a line of credit from Merrill Lynch. On or about May 25, 2008, in an email responding to a query from Omar Rasheed, a vice president of Merrill Lynch in Yardley, PA, seeking information on the identity of Atlas' principal shareholders, Chalamala wrote that "current ownership % - venu [Chalamala] – 35%, Brandon [Ellis] 20%, Shyam [Bhaskar] 25% (lives in India), Manoj 9% (lives in India), Kul – 9% (lives in India). On May 30, 2008, Chalamala wrote to Bhaskar to explain that "I am going ahead with a LOC (line of credit) with ML (Merrill Lynch). We will keep entities independent to contain liability. ML wants local guarantors – similarly Indian banks may want local guarantors, and that's where you may want to use yours." Complaint at ¶ 38; Rosen Cert. at Exh. H.

Similarly on August 8, 2008, a representative of the New Jersey pharmaceutical company that Bhaskar brought into Atlas as a client sought further information on Atlas Systems Inc.'s ownership and Chalamala responded in an email to Bhaskar that: **"We**

will send 3 names (you, me and Brandon [Ellis]) and we will qualify as majority stake holders." Complaint at ¶ 39; Rosen Cert. at Exh. K.

In late 2008, Chalamala and/or Ellis with the approval of Chalamala circulated a draft shareholder agreement for Atlas Systems Inc., listing the same five shareholders (Chalamala, Ellis, Bhaskar, Sharma and Mulasi). Bhaskar sent extensive questions and comments back to the other shareholders in reaction to this draft on or about January 30, 2009. Complaint at ¶ 40; Rosen Cert. at Exh. L.

Further, Bhaskar was issued a personal Bank of America Check Card with the last four digits of 5901 in the name of Atlas Systems Inc. The Atlas website, www.atlassystems.com, until Bhaskar's constructive discharge in June 2009, listed him as COO, Chalamala as Chairman and CEO and Brandon Ellis as President. Complaint at ¶¶ 41-42; Rosen Cert. at Exhs. M and D.

F.    **Further Acts of Oppression Against Bhaskar**

In late 2008 and early 2009, Bhaskar continued to seek additional financial and other information from Chalamala, which was essentially refused. At some points Bhaskar threatened to leave with his clients if he was not provided with the management role he was promised. Defendant used these statements, made out of pure desperation by Bhaskar as a result of Defendants' personal and professional oppression, as an excuse to freeze him out of any material decision making role, rather than following through on the promises he made. Complaint at ¶ 45.

The oppression became such that Chalamala actually documented Bhaskar's freeze-out from management and the conditions for Bhaskar's constructive discharge. On or about October 27, 2008, a new Atlas Systems Organizational chart was issued

which showed Bhaskar as titular second in command but with every Practice Head in the organization reporting directly to Chalamala. Chalamala's promise that Bhaskar would be announced as Chalamala's successor and the future CEO was never made official in that chart or elsewhere. In addition, Chalamala, without Bhaskar's approval and knowledge, provided Ellis the account management responsibility of the accounts Bhaskar was intended to have and insisted that Bhaskar share all the client related information with Ellis. Complaint at ¶ 47; Rosen Cert at Exh. N.

Chalamala had at various points of time taken unilateral decisions that interfered directly with Bhaskar's role and responsibilities. For example, in the large Pharmaceutical account which Bhaskar brought in and had an account management role, Chalamala engaged sub contractors into the project without letting the customer and Bhaskar know, causing inquiries by the customer which could not be readily answered by Bhaskar. Similarly, in another instance, Chalamala closed a hiring position with a particular resource without informing Bhaskar or the Indian team working for that client. Complaint at ¶ 48.

Ultimately, Chalamala using Ellis and himself, effectively removed Bhaskar's ability to perform his job responsibilities within the company. To resolve the pending issues, his roles and responsibilities and the future steps, Bhaskar traveled to the USA in the first quarter of 2009, and discussed these disputes with Chalamala. Chalamala agreed to give him the sales and financial responsibilities with immediate effect and define him as a successor. However, while Bhaskar was still in the USA attempting to build business, Chalamala by-passed the agreed role of Bhaskar in finance, went ahead and forced India to sign the contract with Atlas Systems Inc. Bhaskar insisted that he be

15

allowed to handle the finances which Chalamala again controlled.   Frustrated and exhausted by this passive-aggressive and duplicitous treatment, Bhaskar had no choice but to resign by email as of February 15, 2009.  Complaint at ¶ 50.

Chalamala also made a point of attempting to deprive Bhaskar of his agreed-upon bonus and salary increases.  Despite the fact that Bhaskar was responsible for at least 65% of the Company's revenues, he insisted that Bhaskar's salary was "on the high side," and when challenged, backtracked and agreed Bhaskar was being paid – even apart from the business he brought in – a market wage. Complaint at ¶ 52.

However, as the tensions between the men rose, Chalamala took out his frustration on the heads of the practice teams who were drawing salaries in India, but withholding their bonuses, in effect saying that because he could not agree on a bonus for Bhaskar, he would withhold all bonuses.  This directly affected Bhaskar's brother, who was a practice head. Complaint at ¶ 53.

These behaviors are consistent with that experienced by Bhaskar, forcing Bhaskar to resign.  Rosen Cert. at Exh. O.  Following this constructive discharge, however, between February 2009 and March 2009, Chalamala again promised Bhaskar he would enhance his role and asked Bhaskar for his input on several issues. Bhaskar provided Chalamala various options. Chalamala sought time, insisted that Bhaskar not discuss his resignation with others for the fear of losing business and in the end, on the promised date, again deferred his decision to the "board."   Bhaskar repeatedly insisted on reviewing the U.S. financial information to determine whether there were any irregularities. No information was provided.   Complaint at ¶¶ 54-55. Rosen Cert. at Exh. P.

Finally, Bhaskar, using his privileges with an Atlas Systems Inc. bank account, attempted to access the online information and let Chalamala know on March 16, 2009. Rosen Cert. at Exh. P. Immediately, Chalamala responded, in an email dated March 17, 2009 that he was accepting Bhaskar's resignation "as COO of Atlas Systems Private Limited," effective March 20, 2009 and was replacing him with Ellis. This was constructive termination by Atlas Systems. Complaint at ¶ 56; Rosen Cert. at Exh. O.

Although as demonstrated by evidence set forth above, Bhaskar was clearly the COO of Atlas Systems Inc. as well, Chalamala's actions were a subterfuge to attempt to create a record of Bhaskar being employed only by the Indian entity. Complaint at ¶ 57.

On March 20, 2009, Chalamala extended the notice period to the full three months, the maximum terms required by the employment agreement after resignation. Rosen Cert. at Exh. O. However, on April 11, 2009, before the three month period elapsed, Bhaskar withdrew his resignation and promised to remain with Atlas for at least two years as Chalamala and the other board members insisted that the roles and responsibilities of Bhaskar can be defined on his commitment to Atlas. Complaint at ¶ 58; Rosen Cert. at Exh. Q.

Although Bhaskar was sent a draft shareholder agreement for Atlas Systems Inc. in late 2008, in early 2009, as the conflict between Bhaskar and Chalamala intensified, a new draft was circulated, this time for Atlas Systems Private Limited, ostensibly to limit Bhaskar's role and to claim that he had no rights to Atlas Systems, Inc. However, the Private Limited is an Indian company and the shareholder agreement was in a U.S. corporate form, drafted, upon information and belief, by New Jersey counsel for Atlas Systems Inc., which is not licensed in India, and was clearly sent as a subterfuge so that

17

the Defendants can assert that Bhaskar owns only 9% of the Indian entity. Complaint at ¶ 59; Rosen Cert. at Exh. R.

The revised Atlas Systems Private Limited agreement is in and of itself evidence of shareholder oppression. It reads like an employment agreement containing extensive restrictive covenants for shareholders that were both onerous and adhesive. These restrictive employment and solicitation covenants would last five years after employment into a shareholder agreement – rather than into an employment agreement -- without any compensation for that limitation and without any protection whatsoever from unreasonable termination and no mechanism for voluntary termination. Under this draft agreement, the Company could terminate Mr. Bhaskar – or any shareholder -- and he would not be able to compete for between more than 2 and 6 years (depending on the date of sale of the shares) and would be remunerated for his shares using some unknown method of valuation which would inevitably undervalue them. Complaint at ¶ 60.

Bhaskar was presented with this agreement and told that he must approve it in or about April 2009. There were numerous blanks and missing sections to the Agreement that ultimately provide little more than boilerplate language and leave open as many questions as answers, such as shares outstanding, past loans and obligations to existing shareholders and a valuation formula. When Bhaskar raised questions and sought additional documents regarding this agreement, Bhaskar was then characterized by Chalamala and Ellis as being "intransigent." Complaint at ¶ 61.

Despite the March 17, 2009 email described above, Chalamala and other shareholders essentially ignored Bhaskar's withdrawal of his resignation, and continued to deal with him in typical fashion, including requiring him to fill out a self-evaluation

form for the previous period and asking him for his "career aspirations." Rosen Cert. at Exh. U. There were also discussions about Bhaskar taking an increased role in management. However, all of this dialogue and encouragement was a pretext to lull Bhaskar into believing that he had continued employment while they secretly attempted to wrest control of his accounts. Complaint at ¶ 61.

However, after Bhaskar retained counsel, Defendants again raised his resignation "as COO of Atlas Systems Pvt. Ltd.", and then moved to terminate him in mid-May 2009, but agreed to extend the termination date until June 10, 2009, the day that settlement talks ended. Complaint at ¶ 62.

As a result, Bhaskar has received no bonus for the fiscal year 2008 - 2009, no dividend or returns for his shares, no stock certificates, and was presented with draft shareholder agreements designed to bind him to Atlas for an extended period as no more than an indentured servant. Complaint at ¶ 63.

## LEGAL ARGUMENT

### I.    BHASKAR IS ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF

Bhaskar notes at the outset that injunctive relief is particularly appropriate with respect to applications made under N.J.S.A. 14A:12-7. See, e.g., Balsamides v. Perle, 160 N.J. 352, 356 (1999) (trial court issued preliminary injunction in response to application under N.J.S.A. 14A:12-7 requiring, among other things, that "business decisions were not to be made without the concurrence of both" of the 50% shareholders of the subject corporation). It is particularly appropriate here, where Chalamala has acted imperiously, boxing Bhaskar out of any authority and refusing to provide him with information concerning his shares or even copies of share certificates. Indeed, as set forth in detail below, under the principles enunciated by the New Jersey Supreme Court in Muellenberg v. Bikon Corporation, 143 N.J. 168 (1996) Chalamala's conduct here constitutes oppression pursuant to N.J.S.A. 14A:12-7.

An injunction acts as a preventive device providing relief against future acts actually threatened or reasonably apprehended. Trisolini v. Meltsner, 23 N.J. Super. 204 (App. Div. 1952). The object of a temporary or preliminary injunction is to prevent some threatening, irreparable mischief which should be averted until opportunity is offered for a full and deliberate investigation of the case. Evening Times Printing and Publishing Co. v. American Newspaper Guild, 124 N.J. Eq. 71, 74 (E. & A. 1938).

Temporary injunctive relief is to be granted where a plaintiff, such as Bhaskar in the instant case, shows that he is threatened by irreparable damage for which there is no adequate remedy at law, is likely to prevail on the merits of his claim, and the inconvenience or loss to the opposing party will be minimal if the requested relief is granted. Crowe v. DeGioia, 90 N.J. 126, 132-34 (1982); Citizen Coach Co. v. Camden Horse R.R. Co., 29 N.J. Eq. 299 (E. & A. 1978);

20

Zoning Bd. Of Adjustment of Sparta Twp. v. Service Electric Cable Television of N.J., Inc., 198 N.J. Super. 370 (App. Div. 1985).

As demonstrated below, all of the requisite elements are present in this case. Accordingly, Bhaskar is entitled to immediate injunctive relief requested - essentially maintaining the status quo - as a matter of law.

## A. Bhaskar Will Suffer Irreparable Injury Absent The Preliminary Injunctive Relief Sought

Absent the imposition of the restraints sought, Bhaskar will suffer immediate and irreparable injury as a result of Chalamala's acts of conversion and shareholder oppression in violation of N.J.S.A. 14A:12-7, his breach of contract with and breach of fiduciary obligations to Bhaskar and his tortious interference with Bhaskar's economic gain. Chalamala's acts have damaged Bhaskar and left him without employment, and without access to any information concerning Atlas' operations. Bhaskar has never had full access to Atlas' records and relies on his educated suspicions that Chalamala has been self-dealing in the course of his running of the corporation without shareholder meetings without any respect for the legal form of the corporation and has recently attempted to eliminate any evidence of Bhaskar's ownership interests. Moreover, Bhaskar has been careful not to interact with the large clients he brought into Atlas despite the fact Atlas has usurped his relationships with these clients. Chalamala's continues to run Atlas in a manner inconsistent with the best interests of the Shareholders. He accordingly represents a continuing harm to Bhaskar and Atlas. Bhaskar cannot reasonably be expected to sit idly and permit Chalamala to destroy Atlas and its reputation, as well as his reputation. In Crowe, supra, 90 N.J. 126 the New Jersey Supreme Court stated:

> Harm is generally considered irreparable in equity if it cannot be addressed
> adequately by monetary damages. In certain circumstances, personal

21

inconvenience can constitute irreparable injury justifying the issuance of injunctive relief.

Id. at 133. In the instant case, Bhaskar will be irreparably harmed if Chalamala succeeds in his unilateral and wrongful attempt to usurp the work Bhaskar developed over the past few years. Bhaskar has a reasonable and protectable expectation of employment and economic gain with the Company that the misconduct of Chalamala, his fiduciary, has improperly and unlawfully damaged to the point of destruction.

**B.     Injunctive Relief Should Be Granted Because Bhaskar Enjoys A Likelihood Of Success On the Merits.**

Bhaskar is likely to succeed on its claims for the relief requested because under applicable law he will easily demonstrate that he owns 25% of all Atlas entities, particularly Atlas Systems Inc., and that Chalamala is guilty of minority shareholder oppression, breach of fiduciary duty, breach of contract, breach of the covenant of good faith and fair dealing, conversion and tortuous interference with prospective economic gain. He will also demonstrate that Chalamala has damaged the business of the Company, engaged in abusive and oppressive conduct towards Bhaskar and caused damage to the Company's customer relationships and reputation.

Accordingly, given the uniqueness of the relief sought, the inadequacy of monetary damages and the lack of any prejudice to Chalamala, Bhaskar is entitled to the limited temporary injunctive relief sought – to preserve the status quo of the Company's business, to prevent Chalamala from destroying evidence (including the Company's books and records) and causing further harm to the Company's reputation and client relationships, and by Ordering an accounting and access to books and records permit the Court to determine the extent of Chalamala' oppression of Bhaskar such that relief under N.J.S.A. 14A:12-7 is warranted.

22

C.   **The Relative Balance Of Hardships Weigh Heavily In Favor Of Granting Bhaskar The Injunctive Relief Sought.**

A court of equity must weigh the relative benefits and hardships to the parties if the injunction is granted. Suenram v. Society of Valley Hosp., 155 N.J. Super. 593, 597 (Law Div. 1977). A court must also consider principles of justice, equity and morality when determining an application for temporary injunctive relief. Poff v. Caro, 228 N.J. Super. 370, 375 (Law Div. 1987); Sparta, supra, 198 N.J. Super. at 379.

In the present case, Chalamala cannot demonstrate any undue prejudice by the injunctive relief sought. Bhaskar seeks that an Order be entered preserving the status quo and providing access to Atlas' books and records and preventing Chalamala from unilaterally engaging in any further acts intending to harm Bhaskar or Atlas' operations – all of which is clearly and unambiguously in breach of Chalamala's fiduciary obligations to the Company and/or to Bhaskar in any event.

As the foregoing demonstrates, Bhaskar satisfies all of the elements necessary to obtain injunctive relief. Accordingly, this Court should grant Bhaskar' application for temporary restraints, pending hearing on the order to show cause.

II.   **BHASKAR IS AN OPPRESSED MINORITY SHAREHOLDER WITHIN THE MEANING OF N.J.S.A. 14A:12-7**

Because, as set forth above, Chalamala has committed numerous and material acts of oppression and unfairness towards Bhaskar, Bhaskar has an unequivocal right to seek a court-ordered buyout of his interests in Atlas Systems. Chalamala has abused his authority as an officer and director of Atlas and engaged in acts of oppression towards Bhaskar and otherwise treated Bhaskar unfairly in his capacity as a shareholder of Atlas. Under any analysis,

23

Chalamala's acts of oppression towards Bhaskar have, among other things, defeated Bhaskar's monetary and non-monetary expectations concerning his role as an Atlas shareholder.

By way of N.J.S.A. 14A:12-7(1)(c), concerning minority shareholders oppression, this State's legislature has recognized the plight of individuals such as Bhaskar, noting in particular "that shareholders in close corporations need special protection because of their unique vulnerability." Brenner v. Berkowitz, 134 N.J. 488, 505 (1993). This "unique vulnerability" stems from the reality that such shareholders are often friends to begin with, and the destruction of the personal relationships results in the deterioration of the corporation. Id. Further, minority shareholders are subject to the majority holders' control over the way the corporation runs, and should minority holders disagree with management style, they will find their shares difficult to sell. Id. As the New Jersey Supreme Court has noted, under such circumstances "the discord in the corporation makes the minority stock even more difficult to sell." Id.

Thus, N.J.S.A. 14A:12-7(1)(c) provides that the Superior Court may appoint a custodian, appoint a provisional director, order a sale of the corporation's stock or enter a judgment dissolving the corporation, upon proof that "in the case of a corporation having 25 or less shareholders, the directors or those in control have acted fraudulently or illegally, mismanaged the corporation, or abused their authority as its officers or directors or have acted oppressively or unfairly towards one or more minority shareholders in their capacities as shareholders, directors, officers or employees." The New Jersey Supreme Court has recognized that this statute "should be interpreted broadly to provide remedies for the 'distinctive problems of close corporations.'" Brenner, supra, 134 N.J. at 508.

A minority shareholder seeking protection under the statute must show both 1) "Oppression," which is "usually directed at a minority shareholder personally," and results when

a shareholder's "reasonable expectations" are frustrated, id. at 506, and 2) a "nexus" between the oppressive conduct and either the minority shareholder himself or his interest in the corporation. Id. at 508. The New Jersey Supreme Court in Muellenberg v. Bikon Corporation, 143 N.J. 168 (1996), further articulates the guiding principle for purposes of a small, closely held corporation, specifically whether the fair expectations of the parties have been met:

> A person who buys a minority interest in a close corporation does so, not only in the hope of enjoying an increase in the value of the shareholder's stake in the business, but for the assurance of employment in the business in a managerial position. In addition to the security of long term employment and the prospect of financial return in the form of salary, the expectation includes a voice in the operation and management of the business and the formulation of its plan for future development.

> Id. at 180-181.

Bhaskar can make a showing that the oppressive behavior of Chalamala was personal to him and frustrated his expectations in the many actions described above, resulting in significant, pecuniary and emotional harm. As set forth above and in the Verified Complaint, Chalamala's actions towards Bhaskar have forced the Plaintiff out of a corporation that he served as COO and built by drawing upon his prior relationships and contacts at various Fortune 100 companies, contributing accounts that now represent approximately 65% of Atlas' current revenue. Complaint at ¶ 18. Chalamala's actions have left Bhaskar with no bonus for the fiscal year of 2008 – 2009, no dividend or returns for his shares and no stock certificates. Complaint at ¶ 63. This Court should consider that Bhaskar's "reasonable expectation" of his role in the corporation—as a COO and shareholder, who has contributed substantially to the account base of Atlas and whose managerial work with Atlas would continue to grow and expand—has been thwarted. See Brenner, supra, 134 N.J. at 509. Indeed, the draft shareholder agreement designed to bind Bhaskar to Atlas for an extended period as no more than an indentured servant indicates

precisely how far Bhaskar's status has fallen in Atlas. Complaint at ¶ 63. Chalamala's behavior has also interfered with the personal contacts that Bhaskar gave to Atlas, undoubtedly affecting not only any future business endeavors that Bhaskar may seek to pursue, but also the non-monetary aspects of those relationships. See Complaint at ¶ 61. The Court may consider the ramifications of such casualties as well. Brenner, supra, 134 N.J. at 510 ("The special nature of the close corporation requires that the court go beyond considering merely monetary harm."). The nature of these examples, which underscore the specific targeting of Bhaksar and endanger his interest in a company he helped build, indicate that "nexus" exists between the oppressive behavior and Bhaksar himself. See Brenner, supra, 134 N.J. at 508 ("in determining the nexus between the misconduct and the harm to the shareholder, the court must consider those acts that affect or jeopardize a shareholder's stock interest as well as those acts that may be specifically targeted to the shareholder.").

This case presents a textbook case of shareholder oppression. Thus, having shown both oppressive misconduct on the part of Chalamala, and a nexus between the harm and his interest in and expectations for Atlas, Bhaskar seeks from this Court the remedy of a buy-out. See Brenner, supra, 134 N.J. at 510.

N.J.S.A. 14A:12-7 authorizes a buy-out of a shareholder's position without a court necessarily finding oppressive conduct to have occurred, but where a court is convinced that a buy-out is a fair and equitable result:

> Upon motion of the corporation or any shareholder who is a party to the proceeding, the court may order the sale of all shares of the corporation's stock held by any other shareholder who is a party to the proceeding to either the corporation or the moving shareholder or shareholders, whichever is specified in the motion, if the court determines in its discretion that such an order would be fair and equitable to all parties under all of the circumstances of the case.

N.J.S.A. 14A:12-7(8). Against this framework, this Court should consider Bhaskar's claim that he is an oppressed shareholder and therefore entitled to buy-out of his interest in the Company based upon the following factors: (1) Chalamala's numerous acts, detailed above and in the Verified Complaint, constituting abuse of authority, oppression and unfairness; (2) the inability of Chalamala and Bhaskar to communicate with each other; and (3) Chalamala's destruction of Bhaskar's reasonable expectations as a shareholder, officer and director of the Atlas entities. In light of the fact that the relationships serving as the foundation of this closely held corporation are significantly damaged, a court-ordered buy out would fairly and equitably resolve this dispute for all parties.

### III. THIS COURT SHOULD GRANT BHASKAR'S APPLICATION FOR EXPEDITED DISCOVERY

Under the New Jersey law, courts exercise broad discretion over the sequence and timing of discovery and may modify the typical sequence of discovery where, as here, a litigant demonstrates cause for expediting discovery. R. 4:10-4 of the Rules Governing the Courts of the State of New Jersey, regarding sequence and timing of discovery, provides as follows:

> Unless the court upon motion, for the convenience of parties and witnesses and in the interests of justice, orders otherwise, methods of discovery may be used in any sequence and the fact that a party is conducting discovery, whether by deposition or otherwise, shall not, of itself, operate to delay any other party's discovery.

See R. 4:10-3. Additionally, for good cause pursuant to R. 4:14-2(b) the court may shorten the typical ten (10) day notice requirement for depositions upon oral examination and, also, may shorten, pursuant to R. 4:18-1(b), the thirty (30) day time period for the production of documents responsive to a notice for production of documents.

In this case, Bhaskar will continue to sustain irreparable harm and damages if Chalamala is permitted to continue wrongfully to engage in the misconduct described above. Given the

present relationship between Bhaskar and Chalamala, Chalamala has no incentive to act in Bhaskar's best interests. Bhaskar has no way of knowing the extent of the damage and havoc that Chalamala has wrought upon Atlas – and, the extent to which he, Bhaskar, has been harmed as a result of Chalamala's misconduct without the ability to conduct expedited discovery.

Chalamala can demonstrate no prejudice at this point by being compelled to respond to limited discovery on an expedited basis, and Bhaskar has established more than sufficient cause for expedited discovery from Chalamala. Accordingly, this Court, exercising its broad discretion over the sequence and timing of discovery, should grant Bhaskar's request for expedited discovery by ordering Chalamala to respond to Bhaskar's document demands and deposition requests on the expedited basis requested.

## CONCLUSION

Based on the foregoing analysis, plaintiff Shyam Bhaskar respectfully requests this Court to grant his application for an Order To Show Cause With Temporary Restraints in its entirety and enter a Temporary Restraining Order in his favor and against Chalamala and Atlas Systems Inc. for the temporary injunctive relief sought in his Verified Complaint.

Respectfully submitted,

McCUSKER, ANSELMI, ROSEN,
 CARVELLI & WALSH
A Professional Corporation
210 Park Avenue, Suite 301
Florham Park, NJ 07932
(973) 635-3600
Attorneys for Plaintiff Shyam Bhaskar

By:_____
      Bruce S. Rosen
      Kathleen A. Hirce

Dated: August 27, 2009

29

EXHIBIT D

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION: MERCER COUNTY
DOCKET NUMBER:

SHYAM BHASKAR,

                Plaintiff,

      v.

ATLAS SYSTEMS INC. and VENUGOPALA
CHALAMALA,

                Defendants.

Civil Action

**CERTIFICATION OF
BRUCE S. ROSEN, ESQ. IN
SUPPORT OF PLAINTIFF'S
ORDER TO SHOW CAUSE**

1. I am an attorney at law of the State of New Jersey, a shareholder in McCusker, Anselmi, Rosen and Carvelli, P.C., and counsel for Plaintiff Shyam Bhaskar. I write this Certification in further support of Plaintiff's Order to Show Cause Against Atlas Systems Inc. and Venugopala "Venu" Chalamala.

2. Attached hereto as Exhibit A is a true copy of a March 10, 2006 e-mail communication from "Venu" Chalamala to Shyam Bhaskar.

3. Attached hereto as Exhibit B is a true copy of an April 7, 2006 letter from Venu Chalamala to Shyam Bhaskar.

4. Attached hereto as Exhibit C is a true copy of the Mutual Non-Disclosure and Non-Compete Agreement, signed by Venu Chalamala on April 7, 2006.

5. Attached hereto as Exhibit D is a true copy of pages from the Atlas Systems Website posted prior to June 10, 2009.

6.     Attached hereto as Exhibit E is a true copy of an April 16, 2007 e-mail communication between Venu Chalamala and Shyam Bhaskar.

7.     Attached hereto as Exhibit F is a true copy of Shyam Bhaskar's various documents filed on behalf of Atlas Systems private Ltd.

8.     Attached hereto as Exhibit G is a true copy of the Master Relationship Agreement with Dell Inc.

9.     Attached hereto as Exhibit H is a true copy of a May 30, 2008 e-mail communication between Venugopala Chalamala, Omar Rasheed, Jennifer Adamec and Shyam Bhaskar.

10.     Attached hereto as Exhibit I is a true copy of a June 23, 2008 e-mail communication between Venugopala Chalamala and Shyam Bhaskar.

11.     Attached hereto as Exhibit J is a true copy of Atlas Systems Inc. Certificate of Incorporation and supporting documents.

12.     Attached hereto as Exhibit K is a true copy of an August 8, 2008 e-mail communications between Venugopala Chalamala, Shyam Bhaskar, Eduardo Frias, Sam Daniel and Ramesh Kaluve.

13.     Attached hereto as Exhibit L is a true copy of a proposed Shareholders' Agreement for Atlas Systems Inc. distributed in late 2008 by Brandon Ellis.

14.     Attached hereto as Exhibit M is a true copy of Shyam Bhaskar's Bank of America Business Credit Card through Atlas Systems, Inc.

15.     Attached hereto as Exhibit N is a true copy of Atlas Systems Delivery Organization Chart, Dated October 27, 2008.

16. Attached hereto as Exhibit O is a true copy of e-mail communications from Venugopala Chalamala and Shyam Bhaskar between February 15, 2009 through March 20, 2009.

17. Attached hereto as Exhibit P is a true copy of a March 16, 2009 e-mail communications between Venugopala Chalamala and Shyam Bhaskar.

18. Attached hereto as Exhibit Q is a true copy of an April 11, 2009 e-mail communication between Venugopala Chalamala and Shyam Bhaskar.

19. Attached hereto as Exhibit R is a true copy of a draft Shareholders' Agreement for Atlas Systems Private Ltd., distributed in early 2009.

20. Attached hereto as Exhibit S is a true copy of an January 4, 2008 e-mail communications between Venuegopala Chalamala and Shyam Bhaskar.

21. Attached hereto as Exhibit T is a true copy of e-mail communications from Venuegopala Chalamala and Shyam Bhaskar between June 30, 2007 through July 17, 2007.

22. Attached hereto as Exhibit U is a true copy of Shyam Bhaskar's April 2008-March 2009 Self-Appraisal.

23. Attached hereto as Exhibit V is a true copy of a July 19, 2007 e-mail communication between Venugopala Chalamala and Shyam Bhaskar.

I certify that the foregoing statements made by me are true to the best of my knowledge. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: August 26, 2009

_____
BRUCE S. ROSEN

3